# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: November 28, 2017

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | | |
|---|---|---|
| GEORGE HENDRICKSON, | \* | |
| *parent and next friend of* | \* | PUBLISHED |
| E.H., *a minor*, | \* | |
| | \* | No. 15-812V |
| Petitioner, | \* | |
| v. | \* | Special Master Gowen |
| | \* | |
| SECRETARY OF HEALTH | \* | Dismissal; Failure to Prosecute; Insufficient |
| AND HUMAN SERVICES, | \* | Proof; Diphtheria-Tetanus-Acellular |
| | \* | Pertussis ("DTaP"); Seizures; |
| Respondent. | \* | Dravet Syndrome; SCN1A Mutation. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Richard Gage, Richard Gage P.C., Cheyenne, WY, for petitioner.
Ryan Pyles, United States Department of Justice, Washington, DC for respondent.

## DECISION[1]

On July 31, 2015, George Hendrickson ("petitioner"), as parent and next friend of E.H., a minor, filed a claim in the National Vaccine Injury Compensation Program.[2] Petitioner alleged that a diphtheria-tetanus-acellular pertussis ("DTaP") vaccination administered to E.H. on October 23, 2012, either actually caused or significantly aggravated E.H.'s seizure disorder and developmental delays. Petition (ECF No. 1). The information in the record, however, does not show entitlement to an award under the Program.

## I.  Procedural History

Petitioner filed this claim on July 31, 2015. Petition (ECF No. 1). After being granted several extensions of time, petitioner finished filing all relevant medical records and a Statement

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

of Completion on April 14, 2016.  (ECF Nos. 18, 19).

The undersigned then ordered respondent to file a Rule 4(c) report detailing his position in the case, which was received on July 13, 2016.  Respondent's Report (ECF No. 22).  In his Rule 4(c) report, respondent contended that petitioner had not shown through medical records, expert opinion, or medical literature that the DTaP vaccine had actually caused or significantly aggravated E.H.'s condition.  Respondent argued that E.H. exhibited seizure activity before receiving the DTaP vaccine; E.H.'s seizures after the vaccine were not significantly different than those he had before; and E.H. had an SCN1A gene mutation which has been causally associated with such seizure conditions.

The case proceeded on a litigation track.  Petitioner submitted a neurologist's expert report.  Exhibit 12 (ECF No. 25).  Respondent submitted a responsive expert report from another neurologist.  Exhibit A (ECF No. 30).  On March 23, 2017, I convened a Rule 5 status conference, during which I set forth my preliminary views based on the medical records, expert reports, and medical literature filed to date.  I stated that petitioner's case appeared to have several factual problems.

I first reviewed the medical records, which provide that E.H. experienced seizures before receiving the vaccine at issue, beginning within the second week of life.  While petitioner contends that the seizures changed following the vaccine, there is some indication that the seizures began to change <u>before</u> the vaccine.

Additionally, respondent's expert neurologist opines that DTaP-related seizures typically occur within 72 hours, or 3 days, of the vaccination.  In this case, the medical records indicate that the first seizure following vaccination occurred approximately 15 days afterward.  This is well outside the 3 day time period associated in the literature.

I also discussed that E.H. has been found to have an Ala1339Asp SCN1A missense gene mutation.  Petitioner's expert neurologist contends that this mutation does not cause the type of seizures E.H. has experienced.  However, the neurogenetic report states that SCN1A mutations are associated with a variety of epilepsy phenotypes and with developmental disability.  I noted that while not dispositive regarding the issues in the present case, previous vaccine claims involving SCN1A gene mutations have been unsuccessful.

During the Rule 5 status conference, petitioner's counsel stated that he would like to discuss the issues raised with his client and with his expert neurologist, and potentially have the expert neurologist prepare another report.  I stated that I would grant time for counsel to do so, but cautioned that counsel and petitioner should bear in mind the considerable problems outlined above as they determined how to proceed.  I ordered petitioner to file a responsive expert report or an appropriate motion by June 1, 2017 (approximately 65 days after the Rule 5 status conference on March 23, 2017).

On the deadline of June 1, 2017, petitioner did not file an expert report or a motion.  Instead, he filed a status report indicating that a VAERS report was produced contemporaneous to the onset events in this case.  Petitioner was in the process of obtaining the VAERS report.

Petitioner requested an unspecified extension of time to obtain the VAERS report, after which he would make a decision on how to proceed in this case. (ECF No. 35). I ordered petitioner to file the VAERS report and a status report by July 3, 2017. (ECF No. 36).

On July 5, 2017, petitioner filed a second status report providing that he had requested the VAERS report, but he had not received it. He requested a second unspecified extension. (ECF No. 37). I ordered petitioner to file the VAERS report and a status report by August 7, 2017. (ECF No. 38).

On August 7, 2017, petitioner filed a third status report indicating that he had requested the VAERS report directly from the VAERS system but he had not received it. He requested a third unspecified extension. (ECF No. 39). I ordered petitioner to file the VAERS report and a status report by September 7, 2017. (ECF No. 40).

On September 7, 2017, petitioner filed a fourth status report providing that he was attempting to locate the physician whom he asked to file the VAERS report and that he would make a decision on how to proceed after he spoke with the treating physician. (ECF No. 41). In response, I noted that each of these four status reports lacked detail, any estimate of how much time is needed to complete the task at hand, or any request for specific relief. I instructed petitioner's counsel to avoid these issues going forward. I ordered that by October 10, 2017, petitioner shall file a status report detailing his efforts to locate the physician, to speak with him or her, and to have the VAERS report filed. If petitioner did not make progress by that time, he shall request a specific period of additional time to do so or propose another course of action. (ECF No. 42).

Petitioner did not meet this deadline. After petitioner's counsel did not respond to my law clerk's several messages about this missed deadline, I scheduled a status conference for October 30, 2017. During the status conference, I noted that since the Rule 5 status conference on March 21, 2017, petitioner had received numerous extensions, totaling seven months, to file another expert report or a VAERS report. Over this seven-month period, petitioner had not filed any such report or other materials to help negate the likelihood of an SCN1A etiology for E.H.'s condition. I noted that a petitioner's failure to prosecute his claim may be grounds for dismissal. I ordered petitioner to show cause, if any, why this case should not be dismissed upon the records and reports filed to date, no later than Monday, November 20, 2017. I noted that failure to respond by that date would result in dismissal of petitioner's claim. See Order to Show Cause (ECF No. 43).

To date, petitioner has not filed anything in response to the Order to Show Cause. This matter is now ripe for adjudication.

**II.   Analysis**

A petitioner must establish entitlement to compensation in the Vaccine Program, through one of two ways. The first way is to establish that vaccinee suffered a "Table Injury," i.e., that he or she received a vaccine listed on the Vaccine Injury Table and subsequently developed a corresponding injury within a corresponding period of time. § 300aa-11(c)(1). In the present

case, petitioner does not allege, nor do the medical records indicate, that E.H. suffered a Table Injury.

Thus, petitioner must proceed on the second route – he must establish that the vaccine actually caused the onset or significant aggravation of a condition in the vaccinee. § 300aa-13(a)(1)(A). To prove actual causation, petitioner must present (1) a medical theory; (2) a logical sequence of cause and effect; and (3) a medically acceptable temporal relationship between the vaccination and the injury. Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005). In this case, petitioner filed medical records and an initial expert report in support of his claim. However, during the Rule 5 status conference in March 2017, I outlined several issues which petitioner needed to address. Petitioner has now had over 8 months to offer a supplemental expert report, a VAERS report, or other evidence in support of his claim. Petitioner has failed to file any such evidence or give any indication that he will be able to do so. Therefore, it is appropriate to dismiss petitioner's claim for insufficient proof.

In addition, when a petitioner fails to comply with orders to prosecute his or her claim, the special master may dismiss the claim. Sapharas v. Sec'y of Health & Human Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Human Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c). See also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute when party failed to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of case due to party's failure to respond to discovery requests). In the present case, during the Rule 5 status conference in March 2017, I stated that I would allow petitioner and his counsel time to decide how to proceed, but that they should keep in mind the significant problems in their case. Petitioner did not follow my initial order to file an expert report or an appropriate motion; he instead requested additional time to locate and file a VAERS report. While it is not clear how the VAERS report could have helped to address the problems in this case, I allowed petitioner additional time to attempt to locate the VAERS report, and when that was unsuccessful, to attempt to locate the physician he asked to file the VAERS report. Petitioner subsequently failed to file a status report on his progress and after that, he failed to file any response to my Order to Show Cause. This repeated failure to meet deadlines or otherwise inform the court constitutes a failure to prosecute, which is separate grounds for dismissal of petitioner's claim.

### III. Conclusion

**This case is dismissed for insufficient proof and for failure to prosecute. The Clerk of the Court shall enter judgment accordingly.**

**IT IS SO ORDERED.**

s/Thomas L. Gowen
Thomas L. Gowen
Special Master
