# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: November 26, 2018

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * | | |
| GEORGE HENDRICKSON, | * | |
| *parent and next friend of* | * | UNPUBLISHED |
| E.H., *a minor*, | * | |
| | * | No. 15-812V |
| Petitioner, | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Reasonable Basis; SCN1A |
| | * | Mutation; Dravet Syndrome; |
| Respondent. | * | Forum Rates; Preparation of Fee |
| * * * * * * * * * * * * * * * * * * | | Application; Expert Rate. |

Richard Gage, Richard Gage P.C., Cheyenne, WY, for petitioner.
Ryan D. Pyles, United States Department of Justice, Washington, DC for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On July 31, 2015, George Hendrickson ("petitioner"), as parent and next friend of E.H., a minor, filed a claim in the National Vaccine Injury Compensation Program.[2] Petitioner alleged that a diphtheria-tetanus-acellular pertussis ("DTaP") vaccination administered to E.H. on October 23, 2012, either actually caused or significantly aggravated E.H.'s seizure disorder and developmental delays. Petition (ECF No. 1). On November 28, 2017, the undersigned issued a decision dismissing the claim for failure to prosecute and for insufficient proof. Dismissal Decision (ECF No. 44).[3]

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." Id. **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** Id.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

[3] The procedural history of the claim is laid out well in the Dismissal Decision and the earlier Order to Show Cause issued on October 30, 2017 (ECF No. 43). It will also be discussed below.

On July 9, 2018, petitioner filed a motion for reasonable attorneys' fees and costs.[4] Petitioner's Application ("Pet. App.") (ECF No. 48).[5] He requests $27,739.26 in attorneys' fees and $14.359.27 in attorneys' costs, for a total request of $42,098.53. Pet. App. at 1, 4.[6] [7] Petitioner's counsel also argues that the Court should award attorneys' fees based on the forum rate for attorneys practicing in the Vaccine Program. Pet. App., Attachment 1.

On July 20, 2018, respondent filed a response to the application for attorneys' fees and costs (ECF No. 49). "Respondent respectfully recommends that the special master exercise his discretion and determine whether to award, and /or a reasonable award for, attorneys' fees and costs." Id. at 3.[8] Petitioner has not filed a reply. The matter is ripe for adjudication. For the reasons discussed below, the undersigned **GRANTS** petitioner's application and awards a total of **$33,424.85** in reasonable attorneys' fees and costs.

## I.  Entitlement to Attorneys' Fees and Costs

### A.  Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded" for a petition that results in compensation. §15(e)(1)(A)-(B). Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1). The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." Cloer v. Sec'y of Health & Human Servs., 675 F.3d 1358, 1362 (Fed. Cir. 2012).

---

[4] On December 29, 2017, the Clerk of Court entered judgment (ECF No. 45). Pursuant to Vaccine Rule 13, any application for attorneys' fees and costs was due within 180 days thereafter, by June 27, 2018. On June 25, 2018, petitioner filed a motion for extension of time until July 9, 2018, to file an application for attorneys' fees and costs (ECF No. 47). The extension was granted.

[5] The attorneys' fees and costs application contains "Tabs A – K." However, those are not individually Bates-stamped with the tab and the page number. Thus, citations to the attorneys' fees and costs application will be to the page numbers generated by the CM/ ECF filing system, which are displayed on the top of the document.

[6] These amounts were calculated by the Court. In his fee application, counsel does not reflect the total requested amount for attorneys' fees (for all attorneys and paralegals) and the total requested amount for attorneys' costs (e.g., administrative and expert costs). Instead, confusingly, he provides his fee and each associate's fee. He characterizes paralegal fees as "costs." He then lists "expenses" and "copies." I find this practice to be confusing and not helpful to the overall evaluation as to whether "fees" are reasonable and "costs" are reasonable.

[7] Additionally, counsel calculated the total fees and costs to come to $42,098.73. Pet. App., Tab A. But when the Court added the same figures, the total reached was $42,098.53.

[8] But see Resp. Rep't filed on July 13, 2016 (ECF No. 22) at 14 (contending that this case did not have a reasonable basis to proceed).

"Good faith" and "reasonable basis" are two distinct requirements. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017) (citing Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 289 (2014)).

"Good faith" is a subjective standard. Simmons, 875 F.3d at 635, Chuisano, 116 Fed. Cl. at 289. A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). A petitioner is "entitled to a presumption of good faith." Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996). The good faith requirement may also extend to counsel: "[T]he efforts that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period . . . are properly evaluated in determining whether a petition was brought in good faith." Amankwaa v. Sec'y of Health & Human Servs., 138 Fed. Cl. 282, 289 (2018).

In contrast to good faith, "reasonable basis" is evaluated objectively. Simmons, 875 F.3d at 635, Chuisano, 116 Fed. Cl. at 289. This evaluation does not include consideration of the statute of limitations period or any directly related conduct by counsel. Simmons, 875 F.3d at 635; Amankwaa, 138 Fed. Cl. at 289. This evaluation may include various objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." Amankwaa, 138 Fed. Cl. at 289-90 (citing Santacroce v. Sec'y of Health & Human Servs., No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018) (unpublished decision) ("[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery . . . . Under the objective standard articulated by the Federal Circuit in Simmons, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted.")). A petitioner must furnish some evidence in support of the claim. Bekiaris v. Sec'y of Health & Human Servs., __ Fed. Cl. __, 2018 WL 4908000 (Fed. Cl. Spec. Mstr. Sept. 25, 2018) (reasoning that the petitioner must "adduce medical evidence going to causation beyond temporal proximity"). For example, in Chuisano, the U.S. Court of Federal Claims held that a petitioner's statement plus temporal proximity was insufficient. The court suggested that additional sources of support would include medical records mentioning the vaccination; treating physicians' attribution of the injury to the vaccination; and expert opinion. Chuisano, 116 Fed. Cl. at 290.

Reasonable basis may exist at the time a claim is filed but dissipate as the case progresses. The petitioner and his or her counsel have an obligation to discontinue a claim once they know or should know it cannot be proven. Cottingham v. Sec'y of Health & Human Servs., 134 Fed. Cl. 567, 574 (2017) (citing Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1376 (Fed. Cir. 1994); Curran v. Sec'y of Health & Human Servs., 130 Fed. Cl. 1, 6 (2017); Allicock v. Sec'y of Health & Human Servs., 128 Fed. Cl. 724, 727 (2016)).

**B. Application**

Petitioner is "entitled to a presumption of good faith." Grice, 36 Fed. Cl. at 121. Respondent does not challenge that presumption in this case. I do not find any cause to doubt

3

that presumption of good faith.  Thus, I conclude that it existed throughout the pendency of the claim.

Reasonable basis merits further discussion.  As noted above, this inquiry involves objective factors including the evidence contained in the medical records.  Here, petitioner claimed that the DTaP vaccine administered to E.H. at three months old, on October 23, 2012, caused or significantly aggravated his seizure disorder and developmental delays.  Petitioner alleged that prior to the vaccination, E.H. was healthy apart from "jaundice and episodes of apnea" and that after the vaccination, he "began to suffer convulsive seizures."  Petition at ¶¶ 2, 4.  Petitioner did provide evidence that E.H. received a covered vaccine; he did suffer from seizures thereafter; the claim was filed in time; and there was no prior civil action resulting in compensation.

However, the medical records reflect that E.H. has experienced seizures since birth, thus, an actual causation claim was not feasible.  Petitioner also alleged, in the alternative, that E.H.'s condition was significantly aggravated by the vaccine.  The feasibility of this claim was also questionable, as the medical records suggest that E.H.'s seizures had been evolving in nature and in frequency before he received the vaccination.  See Pet. Ex. 1 at 2 (Aug. 2-3, 2012, mom reported E.H. "arching his back and holding his breath at times for the last three days").  E.H. had episodes of seizures, which were not observed by physicians, for the next seven weeks until September 2012.  See Pet. Ex. 1 at 18 (Aug. 6, 2012, visit for apnea episodes involving becoming "stiff, 'like a rock'"); Pet. Ex. 9 at 4495-96 (On September 7, 2012, parents brought E.H. to neurology clinic due to "more frequent and varied episodes" since onset at second day of life.  Dr. Bunch observed a seizure and hospitalized E.H., where multiple other seizures were observed); Pet. Ex. 9 at 25 (Sept. 9, 2012, "continuing to have the spells that he was previously having.  Mom said that the spells have changed some and he isn't fully passing out, but he continues to struggle with breathing at times."); Pet. Ex. 1 at 4 (Sept. 7, 2012, "Mom reports patient has been having spells more frequently and closer together").  He was put on phenobarbital during this admission.  Pet. Ex. 9 at 4496.

The post-vaccination timing and sequence of events are also questionable.  Petitioner alleged, in an affidavit prepared approximately three years later, that E.H.'s first post-vaccination seizure was "approximately 24 hours" afterward.  Pet. Ex. 8 at 2.  The contemporaneous medical records do not support this alleged temporal association.  Instead, the records show that on October 23, 2012, E.H. received the vaccine and also started nebulizer treatments for a cold.  Pet. Ex. 9 at 138-39, 141, 223.  On October 29, 2012, a steroid, prednisone, was prescribed for the cold.  Id. at 191.  On November 6, 2012, E.H.'s mother called to say that he had missed one dose of the seizure medication phenobarbital because he spit it back out.[9]  He had a seizure at 4:30 a.m. that morning.  Additionally, one side of his face appeared to be swollen.  Pet. Ex. 9 at 219-20.  On November 9, 2012, E.H. and petitioner (his father) presented for medical attention.  Petitioner reported that the facial swelling "happened within 24 hours of getting his vaccines."  Pet. Ex. 9 at 234.  Petitioner also states that "after the steroid ended, [E.H.] had a seizure" and this was the first seizure since he was 7 weeks old.  Id.  This record does not reflect when the steroid ended or when the first seizure was.  This record also stated: "He has continued to have seizures 2 of the

---

[9] Additionally, this notation that E.H. spit out a dose of his anti-seizure medication complicates the question of whether there was a logical sequence of cause and effect between the vaccine and the alleged injury.

4

past three nights." Id. at 235.  Based on these records, the first seizure following the vaccination was not in approximately 24 hours.  Rather, the first seizure was most likely 14 days after the vaccination, early in the morning of November 7, 2012.

Additionally, on August 13, 2013, E.H. tested positive for "a novel disease-causing mutation in the SCN1A gene."  Pet. Ex. 3 at 117.  E.H. has also been diagnosed with Dravet syndrome, a seizure disorder in which SCN1A gene mutations are suspected to play a causal role.  See, e.g., Pet. Ex. 9 at 8708.  Many similar claims regarding Dravet syndrome in the Vaccine Program have been adjudicated and uniformly denied.  See Respondent's Report at 14 (citing e.g., Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d 1363 (Fed. Cir. 2013); Stone v. Sec'y of Health & Human Servs., 676 F.3d 1373 (Fed. Cir. 2012); Snyder v. Sec'y of Health & Human Servs., 553 Fed. App'x 994 (Fed. Cir. 2014); Barclay v. Sec'y of Health & Human Servs., 122 Fed. Cl. 89 (2015); Santini v. Sec'y of Health & Human Servs., 122 Fed. Cl. 102 (2015)).  Based on these cases, respondent contended that petitioner's claim did not have a reasonable basis to proceed."  Respondent's Report at 14.

Before the Rule 4(c) report was filed, I had already set a deadline for petitioner to file an expert report.  Petitioner did in fact file an expert report from Dr. Marcel Kinsbourne, M.D.  Pet. Ex. 13.  Dr. Kinsbourne has strong expertise in neurology and immunology.  He has testified many times in the Vaccine Program.  Moreover, I have resolved several attorneys' fees and costs motions which reflected that Dr. Kinsbourne declined to render a supportive expert opinion.  I would ordinarily be inclined to find that Dr. Kinsbourne's participation in a claim provides support for reasonable basis.  However, nothing requires the acceptance of an expert's conclusion "connected to existing data only by the ipse dixit of the expert," especially if "there is simply too great an analytical gap between the data and the opinion proffered."  Snyder v. Sec'y of Health & Human Servs., 88 Fed. Cl. 706, 743 (2009) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 146 (1997)).  In this case, there were several issues with Dr. Kinsbourne's opinion.  First, he opined that onset was within three days of the vaccination.  This is possibly based on petitioner's later account of the facts.  He does not cite to the contemporaneous medical records, which do not reflect such a close temporal association.  Pet. Ex. 13 at 2, 8.  Second, Dr. Kinsbourne opined that E.H.'s SCN1A gene variant was not disease-causing.  Pet. Ex. 13 at 5-6.  That does not appear to be consistent with the neurogenetic report and the medical literature.  See Scheduling Order issued March 24, 2017 (ECF No. 34).  Dr. Kinsbourne also opined that E.H.'s presentation was not consistent with SCN1A mutations that are recognized to be disease-causing and with Dravet syndrome.  Pet. Ex. 13 at 5-6.  But the Federal Circuit has previously recognized that Dr. Kinsbourne has limited qualifications to opine on these topics.  He stopped practicing pediatric neurology before they came into prominence.  See, e.g., Snyder, 553 Fed. App'x at 1001-02.

After these issues were discussed at the Rule 5 status conference on March 21, 2017, counsel communicated several times with Dr. Kinsbourne.  However, Dr. Kinsbourne did not submit another expert report.  Pet. App. at 23-24, 60.  Counsel also conferred several times with petitioner, who wished to continue with the case.  Petitioner believed that a medical provider had submitted a VAERS report relating to E.H.'s vaccination.  Pet. App. at 23-26.  Petitioner and her counsel contended that a VAERS report could have "very relevant information dealing with the issue of onset."  Status Report filed June 1, 2017 (ECF No. 35).  They received several additional extensions of time to file the VAERS report or other support for the claim.  Status Report filed

5

July 5, 2017 (ECF No. 37); Status Report filed August 7, 2017 (ECF No. 39); Status Report filed September 7, 2017 (ECF No. 41). After petitioner missed the latest deadline on October 10, 2017, my law clerk contacted petitioner's counsel several times before getting a response. I then convened a status conference. While this is not memorialized in the subsequent order, according to my notes, during the status conference Mr. Gage stated that he was assuming and waiting for the case to be dismissed. I then issued an order to show cause why the case should not be dismissed on October 30, 2017 (ECF No. 43), followed by a decision dismissing the case based on failure to prosecute and insufficient proof on November 28, 2017 (ECF No. 44).

Respondent now avers that I should use my discretion in evaluating whether the case "was filed and proceeded with a reasonable basis" in determining whether to award attorneys' fees and costs. Respondent's Resp (ECF No. 49) at 3.

Upon review, I find that the claim possessed reasonable basis when it was filed. The medical records show that E.H. did have a seizure condition. However, medication appeared to control that condition for almost two months. There was some level of temporal association between the vaccination and the seizures resuming and getting even worse. A medical expert with experience in the Vaccine Program was willing to submit an initial expert report, which did seek to distinguish E.H.'s particular genetic mutation from other mutations in the SCN1A gene which have been found to be disease-causing.

However, the claim's basis deteriorated as it went on. Petitioner's expert's assertion that onset began within three days post-vaccination was not supported by the medical records. Respondent and I were not inclined to accept the distinctions between this claim and past unsuccessful claims involving SCN1A mutations and Dravet Syndrome. These issues weakened the basis for continuing with the claim following the Rule 5 status conference.

Case law provides that reasonable basis is an objective finding, but also that a petitioner and his counsel are obligated to discontinue a claim once they know or should know that reasonable basis does not exist. Cottingham, 134 Fed. Cl. at 574 (internal citations omitted). Here, it appears that counsel strived to keep the petitioner involved and informed about the claim, but they may have had difficulty resolving the VAERS report issue and otherwise determining how to proceed. Counsel could have also communicated more effectively with the Court, particularly when he missed the deadline of October 10, 2017. These issues delayed resolution of the claim.

Overall, I find that petitioner and his counsel made reasonable efforts to improve or discontinue the claim. Accordingly, I will award reasonable attorneys' fees and costs for the duration of the claim. However, going forward, I strongly encourage petitioner's counsel Mr. Gage to meet deadlines and to give the Court additional detail regarding the progress of his cases, in the interest of resolving cases more efficiently.

## II. Reasonable Attorneys' Fees and Costs

### A. Legal Standard

"[T]he determination of the amount of reasonable attorneys' fees is within the special master's discretion," and Special Masters are afforded "wide discretion" in determining the reasonableness of a petitioner's request for reasonable attorneys' fees and costs.  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993); Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  Avera, 515 F.3d at 1349.  Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

Under the Vaccine Act, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Avera, 515 F.3d at 1347-48.  In determining an award of attorneys' fees, a court should generally use the forum rate, i.e., the District of Columbia rate.  Id. at 1348.  However, an exception to the forum rule applies where the bulk of an attorney's work is performed outside of the forum, and where there is a "very significant" difference in compensation rates between the place where the work was performed and the forum.  Id. at 1349 (citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).

### B. Application

Petitioner requests the following rates for the following individuals involved in the case:

|  | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Richard Gage (RG) | $299.64 | $382 | $382 | $391 | $404 |
| Kristen Blume (KB) | -- | -- | -- | -- | $380 |
| Don Gerstein (DG) | -- | $285 | -- | -- | -- |
| Dustin Lujan (DL) | -- | 160 | -- | -- | -- |
| *Paralegals* | | | | | |
| Susan McNair (SM) | $112 | $120 | $120 | $120 | $135 |
| Brian Vance (BV) | $112 | $120 | $120 | $120 | $135 |
| Anne Hesse (AH) | -- | $110 | -- | -- | -- |

Pet. Int. App. at 57-93.  Petitioner submits that Mr. Gage's local rate for work performed in 2018 (listed above) is not "very significantly different" from the rate he would receive if he were

7

entitled to forum rates.[10]  He discusses and provides other attorneys' affidavits to support that Mr. Gage was paid $300 per hour for his work representing a plaintiff in a 2009 – 2010 Fair Labor Standards Act ("FLSA") case.  Pet. App., Attachment 1 at 4-5; Attachment 3.  He was also paid $300 per hour for acting as local Wyoming counsel for the defendant in an asbestos exposure case.  Pet. App., Attachment 1 at 4-5; Attachment 2.  His work in both cases took place in the locality of Cheyenne, Wyoming.  Petitioner also cites four cases from the United States District Court for the District Court of Colorado.  Id. at 4 (citing Center for Biological Diversity v. United States Fish and Wildlife Serv., 703 F.Supp.2d 1243, 1249 (D. Colo., Apr. 1, 2010); Nero v. American Family Mutual Ins. Co., 2013 WL 5323191 (D. Colo., Sept. 23, 2013); MemoryTen, Inc. v. LV Admin. Servs., Inc., 2013 WL 1154492, at *3 (D. Colo., Mar. 19, 2013); Nova Leasing, LLC v. Sun River Energy, Inc., 2013 WL 1302265, at *3 (D. Colo. Mar. 28, 2013).  Petitioner argues that based on these cases, Mr. Gage's 2018 local rate is $404 per hour and that is not significantly different from his proposed forum rate.  Thus, he contends that attorneys' fees awarded to the Gage firm should be based on forum rates.  Pet. App., Attachment 1 at 1, citing McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015); Garrison v. Sec'y of Health & Human Servs., No. 14-762V, 2016 WL 3022076 (Fed. Cl. Spec. Mstr. April 29, 2016), aff'd, 128 Fed. Cl. 99 (2016).  Respondent, in his response to the application for fees and costs, does not address this issue.

Petitioner's memorandum is strikingly similar to what the Gage firm submitted approximately two years ago in another case on my docket, Onikama, 15-1348V.  It cites the same cases and contains much of the same wording.  However, it fails to cite or discuss my opinion which carefully evaluated this evidence but eventually declined to award forum rates to the Gage firm.  Onikama v. Sec'y of Health & Human Servs., No. 15-1348V, 2017 WL 1718797 (Fed. Cl. Spec. Mstr. Apr. 3, 2017); see also Hough v. Sec'y of Health & Human Servs., No. 15-1008V, 2018 WL 1310860 (Fed. Cl. Spec. Mstr. Feb. 13, 2018) (adjusting the Gage firm's rates for 2017); Briggs v. Sec'y of Health & Human Servs., No. 15-737V, 2018 WL 3991261, *3 (Fed. Cl. Spec. Mstr. June 26, 2018) (increasing those rates again in 2018).  Indeed, the only reference to these cases is a brief assertion that in Briggs, the 2018 rate of $326 awarded to Mr. Gage was artificially low.  Pet. App., Attachment 1 at 4.

Petitioner also neglects to mention that other special masters have repeatedly declined to award forum rates to the Gage firm.  See, e.g., Henderson v. Sec'y of Health & Human Servs., No. 14-1082V, 2017 WL 2628170 (Fed. Cl. May 25, 2017); Auch v. Sec'y of Health & Human Servs., No. 12-673V, 2017 WL 1718783 (Fed. Cl. Spec. Mstr. April 5, 2017); Anthony v. Sec'y of Health & Human Servs., No. 14-680V, 2017 WL 521746 (Fed. Cl. Spec. Mstr. Jan. 11, 2017).  I will note that Special Master Moran recently chastised the Gage firm for seeking increased forum rates without *any* support and without citing to his own prior reasoned opinion on that subject.  Pember v. Sec'y of Health & Human Servs., No. 15-1005V, 2018 WL 3989514, *1 (Fed. Cl. Spec. Mstr. June 28, 2018), citing Anthony, 2017 WL 521746.  I am not aware of any opinions finding that the Gage firm is entitled to forum rates in the Vaccine Program.

---

[10] The undersigned notes that while petitioner's argument concerns Mr. Gage's rates in 2018, only a very limited amount of work on the case was performed in that year.  Indeed, the claim was dismissed in July 2017.  The billing entries reflect that Mr. Gage, his associates, and his paralegals' only work on the matter in 2018 was related to filing the motion for attorneys' fees and costs.

8

Based on my own prior opinion in Onikama and its consistency with fee awards in the Vaccine Program, I am not inclined to award the Gage firm forum rates absent compelling new evidence. That is certainly not present before me. Accordingly, I will again award local rates for the Gage firm in Cheyenne, Wyoming. These rates are set forth below.

|  | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| *Attorneys* |  |  |  |  |  |
| Richard Gage (RG) | $299.64 | $300 | $311 | $318 | $326 |
| Kristen Blume (KB) | -- | -- | -- | -- | $251 |
| Don Gerstein (DG) | -- | $251 | -- | -- | -- |
| Dustin Lujan (DL) | -- | $160 | -- | -- | -- |
| *Paralegals* |  |  |  |  |  |
| Susan McNair (SM) | $120 | $120 | $120 | $120 | $120 |
| Brian Vance (BV) | $120 | $120 | $120 | $120 | $120 |
| Anne Hesse (AH) | -- | $110 | -- | -- | -- |

Application of these rates lowers the fee request by $2,899.30.

**C. Hours Expended**

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

A special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). In making reductions, a life-by-line evaluation of the fee application is not required. Wasson v. Se'cy of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorneys' fee requests ... [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521.

In this case, petitioner requests compensation for a total of 140 hours of time entries submitted in this case. Among the attorneys, Mr. Gage submitted 30.5 hours, Kristen Blume submitted 2.9 hours,[11] and Donald Gerstein submitted 10.8 hours. Among the paralegals, Dustin Lujan submitted 2.0 hours, Susan McNair submitted 13.1 hours, Brian Vance submitted 80.4 hours, and Anne Hess submitted 0.5 hours.

---

[11] Petitioner's application provides that Ms. Blume's entries were for 0.1, 1.6, and 1.2 hours, and her total hours expended were 2.7 hours. Pet. App. at 29. However, this math is incorrect. The total is 2.9 hours.

Petitioner submitted adequate billing logs providing the date of service, the name of the person performing the task, the nature of the task, and the amount of time expended. Pet. App. at 6-42. I appreciate that petitioner submitted both (1) a chronological billing log reflecting the tasks performed by all individuals on the case and (2) a separate list for each individual who performed work on the case. These two sets of data were helpful to my evaluation. Upon review, I find the hours expended on the case to be generally reasonable.

However, several issues merit discussion. In preparing the fee application, Mr. Gage expended 7.4 hours; Kristen Blum expended 2.9 hours; and paralegal Brian Vance expended 9.5 hours. The tasks included "rates issues," "legal research for fees memo" and "supporting affidavits." Pet. App. at 16-17. If these entries are accurate, it is unclear how they contributed to the fee application. As noted above, the memorandum and supporting documentation in support of the request for forum rates in this case were highly similar to what was previously submitted in Onikama. The memoranda in the two cases contain very similar language, including the legal standard and the description of the cases outside the Vaccine Program. Additionally, in each case, the petitioner submitted the same two affidavits from other attorneys in support of Mr. Gage's rate. It is possible that counsel considered updating the memorandum and supporting documentation for this case. However, it does not appear that counsel did so. Again, the memorandum in this case does not even cite to my prior opinion in Onikama. Thus, I will deduct 5.4 hours expended on the fee application by Mr. Gage, which computes to $1,760.40. I will also deduct 5 hours expended by Brian Vance, which computes to $600.00.

Additionally, I have previously criticized the Gage firm's practice of billing for numerous internal conferences about a claim without providing further information. I found this to be one justification for discounting the fee award overall. Hough, 2018 WL 1310860, at *3. Other special masters have done the same. See, e.g., Mack v. Sec'y of Health & Human Servs., No. 15-149V, 2017 WL 5108680, *5 (Fed. Cl. Spec. Mstr. Sept. 28, 2017) (collecting cases). However, the Gage firm has continued this practice. The instant interim fee application contains approximately thirty (30) entries for vague "conferences" and "file review." Many, if not the majority, of these entries, contain no further information regarding what was covered. While brief meetings with his staff to provide oversight and assignment on the case are reasonable, counsel must provide some indication of the subjects covered.

Additionally, I am concerned about the extent of counsel's efforts to resolve this claim, particularly between March – October 2017. I devoted significant time reviewing the expert reports and conducting a Rule 5 status conference with counsel. I also granted petitioner and his counsel several extensions of time to determine how to proceed. I believe it was reasonable to not submit an additional expert report. However, they then requested and received several months to look for a VAERS report which was never obtained. Even if a VAERS report did exist, it is unclear how that would have improved the viability of the claim. Then in October, petitioner missed his amended deadline to file the VAERS report and additional information, at which point I found it necessary to hold a status conference and issue an Order to Show Cause. The persistent missing of deadlines requiring follow up by the Court wastes the Court's time. Petitioner and his counsel should have come to a more prompt decision to dismiss the claim once it became apparent that further proceedings would be fruitless.

Going forward, I encourage counsel to make good faith efforts to discontinue claims which he recognizes are not viable. Counsel is also encouraged to provide further information about the progress of his cases and to request the Court's assistance, such as a status conference including his client, when it would help to move a claim forward.

For these reasons, I will deduct a further 5%, amounting to $1,121.63, from the fee award.

### D. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).

In this case, petitioner requests $14,359.27 in attorneys' costs. The costs of obtaining medical records, filing the claim, and postage appear to be reasonable and they are sufficiently documented. Pet. App. at 44-59, 61. Petitioner requests reimbursement for his expert Dr. Marcel Kinsbourne, M.D., at a rate of $500 per hour for 22.9 hours expended, for a total of $11,450.00. Pet. App. at 60. As referenced above in my discussion of reasonable basis, Dr. Kinsbourne has strong credentials and significant experience in the Vaccine Program. My understanding is that he often declines to render opinions in support of vaccine claims. Additionally, the opinions he does render are often credible and consistent with the facts shown in the medical records. I generally have a positive opinion of Dr. Kinsbourne. However, in this case, Dr. Kinsbourne's report provided that onset was within three days and that the vaccinee's seizures became significantly different than they were before. His report did not cite to particular medical records and upon review, the medical records actually did not appear consistent with these assertions. It is possible that the report reflected the petitioner's memory of events, rather than the medical records which are consistently accorded substantial weight in the Vaccine Program. Additionally, past opinions have noted that Dr. Kinsbourne's strong credentials do not include particular experience with SCN1A mutations and Dravet syndrome, which were the key issues in this case. Accordingly, I will award Dr. Kinsbourne a rate of $400.00 per hour for his work in this case.

### E. Petitioner's Costs

The Vaccine Program also reimburses reasonable costs which the petitioner personally incurred in support of the prosecution of his or her claim.[12] In this case, Mr. Gage submitted a sworn declaration that he "did attempt to contact petitioner regarding his costs." Pet. App. at 63. "However, the petitioner has not responded to any of [Mr. Gage's] attempts. To the best of the undersigned's knowledge, petitioner has no out-of-pocket expenses." Id. A review of the present application for attorneys' fees and costs suggests that counsel incurred the typical costs associated with prosecuting a claim, including the petition filing fee, obtaining medical records, and the expert's retainer and final bill. I will award final attorneys' fees and costs at this time.

---

[12] However, the undersigned does not encourage this practice. Rather, the undersigned encourages counsel to incur any such costs and then seek reimbursement from the Court.

11

**III.    Conclusion**

In accordance with the above, petitioner's motion for attorneys' fees and costs is **GRANTED**. I find that petitioner is entitled to the following reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested: | $27,739.26 |
| Reduction to rates: | - $2,899.30 |
| Reduction for Mr. Gage's work on fee application: | - $1,760.40 |
| Reduction for Ms. Vance's work on fee application: | - $ 600.00 |
| Reduction for other billing issues: | - $1,123.98 |
| **Attorneys' Fees Awarded:** | **$21,355.58** |
| | |
| Attorneys' Costs Requested: | $14,359.27 |
| Reduction to Dr. Kinsbourne's Rate | - $2,290.00 |
| **Attorneys' Costs Awarded:** | **$12,069.27** |
| | |
| **Total Attorneys' Fees and Costs Awarded:** | **$33,424.85** |

Accordingly, I award the following reasonable attorneys' fees and costs:

1) **A lump sum in the amount of $33,424.85, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel of record, Richard Gage of Richard Gage P.C.** [13]

In the absence of a motion for reconsideration or review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[14]

**IT IS SO ORDERED.**

                                                        **s/Thomas L. Gowen**
                                                        Thomas L. Gowen
                                                        Special Master

---

[13] These amounts are intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered. Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir. 1991).

[14] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' separately or jointly filing a notice renouncing their right to seek review.